# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | **Bankruptcy Case No. 04-51572-RBK** |
| PAUL C. JACOBSON, | ) | |
| Debtor. | ) | **Adversary No. 04-5084-RBK** |
| ———————————————— | ) | |
| | ) | |
| PAUL C. JACOBSON, | ) | |
| Appellant, | ) | |
| | ) | **Civil Action No. 07-CV-033-XR** |
| VS. | ) | |
| | ) | |
| BRETT ORMSBY, Conservator for | ) | |
| JAMES ROBERT MILLER, | ) | |
| Appellee. | ) | |

## ORDER

Appellant, Paul C. Jacobson, appeals an order of the United States Bankruptcy Court for the Western District of Texas, The Honorable Ronald B. King presiding, denying Appellant's motion for relief from judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, as incorporated by Rule 9024 of the Federal Rules of Bankruptcy Procedure. Appellant's Rule 60(b) motion sought relief from a July 5, 2005 Judgment of the Bankruptcy Court, which held that a debt in the amount of $4,356,881.16 owed by Jacobson to Appellee, James Robert Miller, is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). For the reasons stated below, the Court AFFIRMS the Bankruptcy Court's denial of Appellant's Rule 60(b) motion. The Clerk is instructed to close this case.

## I. Factual and Procedural Background

Brett Ormsby is the grandson of James Robert Miller. Ormsby was appointed conservator

of Miller by a Utah court during December 2001.[1]  Miller is a 91 year-old retired businessman who currently resides in a nursing home in Salt Lake City, Utah.  In this adversary proceeding, the bankruptcy court dealt with a transaction that began in 1998 between Miller, Miller's long-time business acquaintance, Mr. Clair Phillips, and Phillip's business acquaintance,  Mr. Paul Jacobson.  Jacobson owned a company called FS Condominiums, Inc. ("FSC"), and he and Phillips approached Miller with a proposal for Miller to loan funds so that FSC could acquire and refurbish thirty-three condominium units located in Dallas, Texas.[2]  Jacobson was the president, sole officer, director, and owner of 100% of the outstanding shares of FSC stock.  Miller participated in this project by loaning funds to Jacobson and/or FSC.  FSC and Jacobson would sell the refurbished condominiums at a profit, repaying Miller's initial investment plus interest.  The capital to start the project was lent by Mr. Miller to Mr. Jacobson and his business, FSC, through a series of promissory notes ("Individual Notes").  The Individual Notes were secured by liens on various specified condominium units.

In August 1999, Miller loaned an additional $1.7 million to Jacobson ("August 1999 Note"). Miller became first and second lien holder on the specified condo units, securing both the August 1999 Note and the Individual Notes.  The August 1999 Note set interest at 12%, called for Jacobson to pay monthly arrearage on the interest and to start paying on the principal by August 5, 2000. Several months later, in late November 1999, Miller entered into two separate agreements to extend the maturity date of the Individual Notes and the August 1999 Note.  The first "Modification and Extension Agreement of Certain Promissory Notes," ("First Extension Agreement"), became

---

[1]A "conservator" in Utah is similar to a "guardian" in Texas.

[2]The condominium project was originally named the Foreside Condominiums, but it was subsequently renamed the Point Two Turtle Creek Condominiums.

-2-

effective as of November 19, 1999, and the "Second Modification and Extension Agreement of Certain Promissory Notes," ("Second Extension Agreement"), became effective on November 22, 1999.[3]  The Second Extension Agreement also consolidated an additional loan of $200,000.

In the following year, Miller issued two additional promissory notes to Jacobson on behalf of FSC.  The first was issued on April 6, 2000, in the amount of $140,000, and the second was issued on June 19, 2000, in the amount of $440,000.  Of the $440,000 loaned on June 19, Miller retained $40,000 as a bonus from Jacobson.  Thereafter, correspondences were sent in October 2000 discussing the marketing of the renovated units, projected completion dates, and the net value of the units.  In a memo dated November 21, 2000, Miller was provided with a detailed estimate of the expenditures necessary to complete the renovations.  The additional capital needed totaled $474,300.00.  The proposed remedy was to obtain a loan from Bank Dallas for $400,000 and finance the remaining $74,300 with rental income from Jacobson's other properties in Texas.

Pursuant to this understanding of a need for additional money, Miller and Jacobson signed a "Letter Agreement" dated November 29, 2000.  The letter consolidated the mortgage and all interest held by mortgagor Jacobson, extended the amortization period until March 15, 2001, and provided that Miller release his first liens on certain units in order to provide those units as collateral for the $400,000 loan from Bank Dallas.  On December 8, 2000, Mr. Jacobson sent a letter to Mr. Miller advising that a refusal to comply with the Letter Agreement would cause foreclosure proceedings to be brought against Miller's interests in the project, would jeopardize the project's ability to obtain the loan from Bank Dallas, and would place the entire project in danger of losing

---

[3]Both of the notes were notarized by Mr. Miller and Mr. Jacobson on December 3, 1999, and December 6, 1999, respectively.

millions of dollars.  Thereafter, Miller complied and executed a "Release, Modification, Extension, Estoppel, and Ratification Agreement" ("Modification Agreement") on December 8, 2000.[4]  The Modification Agreement formalized the Letter Agreement.   The debt was consolidated at $3,439,582.27 and set the new note to become effective February 15, 2001.  Additionally, Mr. Jacobson, on behalf of FSC, executed a "Secured Promissory Note" in the amount of the original principal plus interest and provided a new deed of trust to Mr. Miller on twenty-three units to secure the note.

With no payments having been received pursuant to the Modification Agreement, no appreciable work commenced on the condominiums with first liens held by Miller, and none of the funding provided by Bank Dallas having been applied to the condominiums with first liens held by Miller,  the parties entered into negotiations for another extension of the loan.  A "Second Modification, Extension, and Ratification Agreement" ("June 2001 Modification Agreement") became effective on June 1, 2001.  The June 2001 Modification extended the amortization period until September 15, 2001, whereupon the first monthly payment of $38,181.27 would be due.

Jacobson failed to make any loan payments, and on August 6, 2002, Ormsby represented Miller at a foreclosure sale on twenty-three units on which Miller held the first lien.  There were no third party vendors present at the foreclosure auction, and Miller's bid of $800,000 awarded him the deeds.  Thereafter, a certain "Trustee's Deed (by Substitute Trustee)" was filed in the Deed Records Office of Dallas County, Texas on August 7, 2002, conveying twenty-three of the condominium units to Ormsby as the successful bidder.

---

[4]The Modification Agreement was acknowledged on December 8, 2000 by Mr. Miller and Clair Phillips, and by Mr. Jacobson on on December 11, 2000.

Ormsby filed suit against Jacobson, FSC, and Phillips in state district court in Dallas County, Texas.  The suit alleged fraud in real estate transactions, fraud, fraud in the inducement, and breach of fiduciary duty.  Shortly afterwards, on March 15, 2004, Jacobson filed a voluntary petition for bankruptcy pursuant to Chapter 7 of Title 11 of the United States Code.  On June 14, 2004, Ormsby filed a complaint to institute an adversary proceeding in Mr. Jacobson's bankruptcy case.  The complaint contained allegations of fraud and fraud in the inducement and asked that the debts owed by Jacobson to Miller be deemed as nondischargeable pursuant to 11 U.S.C. § 523(a), (4), and (6). The Bankruptcy Court held a three-day hearing commencing on May 17, 2005 and concluding on May 20, 2005.

On July 1, 2005, the Bankruptcy Court found that Jacobson's debt to Miller was nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).  The amount of judgment was $4,356,881.16 plus twelve percent (12%) interest from May 1, 2005 to July 1, 2005, plus interest at the federal judgment rate from the date of the judgment until it is paid.  This amount included all principal and interest up to the June 2001 Modification, added interest at 12% beginning October 1, 2001, credited the balance $800,000 for the amount received as a result of the foreclosure, and calculated interest through April 2005.  Post judgment interest was set at the federal interest rate.

The bankruptcy court found that Jacobson "obtained an extension, modification, or renewal . . . by false representations."  The bankruptcy court based its ruling on the following three false representations: (1) Jacobson represented that the renovation job on all the condominium units would be finished in approximately four months with the $400,000 Bank Dallas loan; (2) Jacobson represented that Miller must release his first lien on ten units so that Jacobson could obtain a loan from Bank Dallas for $400,000 to finish work on all the units; and (3) Jacobson represented that the

homeowner's association ("HOA") was about to foreclose on the condominium units whose owners had not paid their homeowner's assessments.

The Bankruptcy Court found that while the $400,000 Bank Dallas loan was used to renovate the ten units on which Bank Dallas held first liens, almost no work was done on the remaining twenty-three units on which Miller held first liens. Jacobson represented that the $400,000 would be used to complete renovation on all of the units, not just the Bank Dallas units. The Bankruptcy Court found that the only units that were finished were the ten units held as collateral by Bank Dallas, and the twenty-three units held as collateral by Miller were subject to new mechanics liens, new material liens, new claims by the HOA, and were not finished. The evidence indicates that the bulk of the proceeds of the Bank Dallas loan were used to pay existing HOA assessments, past-due amounts owing by Jacobson and/or FSC to various contractors or other existing obligations of FSC, and a payment of $17,318.72 to a separate entity wholly-owned by Jacobson.

The Bankruptcy Court also found that Jacobson was on the board of the HOA, the HOA had never taken any steps to foreclose on any owner for failure to pay assessments, and that the HOA never intended or threatened to foreclose on Jacobson's units.

Jacobson appealed the July 5, 2005 Judgment to this Court, which was docketed as case number SA-05-CV-1125-XR. On September 26, 2006, this Court entered an Order affirming the judgment of the Bankruptcy Court. This Court found that Jacobson fraudulently induced Miller into making the Modification Agreement by (1) stating that the $400,000 Bank Dallas loan would complete the project (first false representation), and (2) that the HOA was about to initiate foreclosure proceedings against Miller's collateral (third false representation). Although this Court concluded that the second false representation cited by the Bankruptcy Court did not support a

-6-

nondischargeability finding because it was a retrospective judgment or opinion concerning the unfavorable terms of the Modification Agreement, the Court concluded that the first and third false representations, which induced Miller to sign the Modification Agreement, justified the Bankruptcy Court's nondischargeability finding.  The Court concluded that the Bankruptcy Court's implicit finding of justifiable reliance was not clearly erroneous. Although Jacobson used the three false representations to obtain an extension, modification, or renewal of the loan, as opposed to the original loan proceeds, the Court held that he still had personal liability on the full amount of the debt.  Although most of the debt owing to Miller consisted of nonrecourse notes, the Court concluded that Jacobson still had personal liability on the full amount of the debt.  Alternatively, the Court held that Jacobson was barred from disclaiming personal liability on the debt based on the doctrines of judicial admissions and waiver.  The Court found that the calculation of damages by the Bankruptcy Court was correct, and alternatively that Jacobson had waived this argument by failing to raise it before the Bankruptcy Court.  The Court concluded that the Bankruptcy Court's various evidentiary rulings were not an abuse of discretion, and the Bankruptcy Court's erroneous factual finding that the foreclosed units were sold at a large loss was harmless error.  The Court concurred in the Bankruptcy Court's finding that there was no accord and satisfaction, no release, no compromise and settlement, no novation, and no purging of the false representations by any later extensions or renewals of the loans.

 On October 24, 2006, Jacobson appealed the Court's Order affirming the July 5, 2005 Judgment to the Fifth Circuit.  That appeal currently remains pending.

While his dischargeability appeal was pending before this Court, Jacobson filed a motion for relief from judgment with the Bankruptcy Court on July 3, 2006.  After hearing the evidence

presented and the arguments of counsel at the hearing on the Rule 60(b) motion on October 6, 2006, the Bankruptcy Court orally denied the motion on October 19, 2006.  Shortly thereafter, on October 20, 2006, the Bankruptcy Court issued a written order denying the motion.  Jacobson filed his Notice of Appeal regarding the denial of the Rule 60(b) motion on October 27, 2006, which was docketed as case number SA-07-CV-033-XR.

On appeal, Appellant argues that the July 5, 2005 Judgment of the Bankruptcy Court should be set aside based on Rules 60(b)(2) and 60(b)(3) of the Federal Rules of Civil Procedure.  Under Rule 60(b)(2), a party may obtain relief from judgment based on "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)," and under Rule 60(b)(3), a party may obtain relief from judgment based on "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party."  Although not argued by Appellant's attorney in his brief, Appellant suggested during the hearing before the Bankruptcy Court that the July 5, 2005 Judgment might be void pursuant to Rule 60(b)(4) because the case was not prosecuted by the real party in interest.

The crux of Appellant's argument is that this case has not been prosecuted by the real party in interest, and Ormsby has fraudulently concealed this fact and his financial interest in the litigation, thus misleading and deceiving Appellant and the Court.  As mentioned previously, Ormsby is the conservator of Miller, and Ormsby has prosecuted this case on Miller's behalf from its inception.  This case has proceeded on the assumption that the various note or notes constituting the indebtedness owed by Jacobson to Miller (the "Jacobson Debt") has remained the personal property of Miller.  On March 17, 2006, Ormsby gave his deposition in Civil No. 050406498, pending in the 3rd Judicial District Court, Salt Lake County, West Jordan Department, State of Utah ("Utah Civil

Action"). The case is styled Brett Ormsby, Conservator for James Robert Miller, Plaintiff, vs. Allan Peterson Jacobson and Verdeen Jacobson, Defendants. In the Utah Civil Action, Ormsby is attempting to set aside certain allegedly fraudulent transfers made by Jacobson to his parents. Trans. 6:12-19. At a March 17, 2006 deposition for the Utah Civil Action, Ormsby allegedly stated that ownership of the Jacobson Debt has been transferred to a Utah limited liability company called JR Miller Investments, LC, ("LLC"), which is currently 50% owned by Ormsby.

Ormsby foreclosed on the twenty-three subject condominiums during August 2002. Appellant argues that Miller transferred the Jacobson Debt to the J. Robert Miller Trust ("Trust"). The Trust was created on April 24, 2002, and certain assets of Miller were transferred to the Trust via a document entitled "General Conveyance" that was executed on the same date. Ormsby is trustee of the Trust. On May 2, 2002, the Trust created the LLC. Although the LLC held no assets at its inception, certain property was subsequently transferred either from the Trust or Miller to the LLC during Spring 2004. At its inception, the LLC was wholly owned by the Trust, and Ormsby served as the manager of the LLC. Although the Trust originally owned 100% of the LLC, Ormsby subsequently acquired a 50% interest in the LLC after an order approving the sale was signed by the Utah Probate Court on April 19, 2004. A document entitled "January 7, 2004 Valuation of JR Miller Investments, LC," which listed the assets held by the LLC, was submitted to the Utah Probate Court along with the proposed order approving sale. For purposes of Appellant's Rule 60(b) motion, the central factual dispute concerns whether the Jacobson Debt was transferred from Miller to the Trust, or from either the Trust or Miller to the LLC, such that Miller is not the real party in interest who is entitled to bring this suit.

In its oral ruling on October 19, 2006, the Bankruptcy Court explained its denial of

Appellant's Rule 60(b) motion.  Essentially, the Bankruptcy Court found that there was never a transfer of the Jacobson Debt to the Trust or the LLC.   The Bankruptcy Court held that the various note or notes constituting the Jacobson Debt were the personal property of Miller, even though the deeds of trust that served as collateral on that debt qualify as an interest in real property.  After Miller foreclosed on the twenty-three condominiums, the Bankruptcy Court found that he transferred the condominiums (but not the underlying Jacobson Debt) to the Trust, and then to the LLC.  The Bankruptcy Court found that the "General Conveyance," which funded the Trust, only transferred the real estate (i.e. the foreclosed condominiums) owned by Miller, not the personal property (i.e. the Jacobson Debt) owned by him.  The Bankruptcy Court concluded that "the note, the obligation, which is personal property owing from Mr. Jacobson and his entities to Mr. Miller, remains in Mr. Miller individually."  The Bankruptcy Court found that there was "no evidence" that the Jacobson Debt was transferred to the Trust, and there was no evidence that the Trust or Miller subsequently transferred the Jacobson Debt to the LLC.  The Bankruptcy Court found that "only the real estate in the form of the condominiums, which were foreclosed upon, were transferred to the LLC."

The Bankruptcy Court then addressed Appellant's contention that Ormsby admitted during the March 17, 2006 deposition that either the Trust or the LLC owns the Jacobson Debt.  Presumably because that deposition involved a different lawsuit (i.e. the Utah Civil Action), the Bankruptcy Court concluded that this statement was an evidentiary admission, which it was entitled to ignore as incorrect.  Even assuming that this statement constituted a judicial admission, which is binding, the Bankruptcy Court concluded that the Trust was the alter-ego of Miller, who had the power to revoke the Trust at will.  Therefore, he was the "equitable owner" of all the trust assets because he is the sole beneficiary of an inter vivos, self-settled trust.  Based on this alter-ego finding, Ormsby,

in his capacity as conservator, would be entitled to prosecute this action on Miller's behalf.

Regarding Ormsby's alleged failure to disclose his 50% ownership interest in the LLC, the Bankruptcy Court found that Ormsby was "an honest and truthful person, and he's not deceptive or disingenuous." However, the Bankruptcy Court further held that it "always regarded Mr. Ormsby as having a personal stake in the outcome of this litigation" because Ormsby's mother and Ormsby himself are presumably the heirs or legatees of Miller's estate. According to the Bankruptcy Court, "[t]he fact that Mr. Ormsby bought into the LLC is not surprising, based upon the work that he's done for Mr. Miller and for Mr. Miller's assets, the fact that he bought into the LLC was reflected in public records in Salt Lake City, Utah in the conservatorship proceeding, and it was expressly approved in that conservatorship proceeding." The Bankruptcy Court found that Ormsby "didn't probably understand the complete extent of all those estate planning documents that were signed [related to the Trust and the LLC]," but the Court found that it had no material effect on the litigation.

### III. Legal Analysis

**A.      The Court will review the Bankruptcy Court's findings of fact for clear error, and it will review the Bankruptcy Court's conclusions of law de novo.**

The Court has appellate jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1). The district court reviews the bankruptcy court's findings of fact for clear error, giving due regard to the bankruptcy judge's opportunity to judge the credibility of witnesses. *General Electric Capital Corp. v. Acosta (In re Acosta)*, 406 F.3d 367, 369 (5th Cir. 2005); *Total Minatome Corp. v. Jack/Wade Drilling, Inc. (In re Jack/Wade Drilling)*, 258 F.3d 385, 387 (5th Cir. 2001); *See In re Young*, 995 F.2d 547, 548 (5th Cir. 1993) (citing Bankr. Rule 8013). The bankruptcy court's factual findings are

clearly erroneous only if, on the entire evidence, the Court is left with a "definite and firm conviction that a mistake has been made." *Otto Candies, L.L.C. v. Nippon Kaiji Kyokai Corp.,* 346 F.3d 530, 533 (5th Cir. 2003); *In re Allison*, 960 F.2d 481, 483 (5th Cir. 1992).  Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous. *Anderson v. Bessener City*, 470 U.S. 564, 574 (1985).

The Court reviews the bankruptcy court's conclusions of law *de novo*. *In re Acosta,* 406 F.3d at 369; *In re Jack/Wade Drilling*, 258 F.3d at 387. The admission of evidence is committed to the sound discretion of the bankruptcy court, subject to review for abuse of that discretion. *See In re Charter Co.*, 125 B.R. 650, 654 (M.D. Fla. 1991) (citing *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1374 (5th Cir. 1981)).

It is well established that an issue is not preserved for appeal when it was not presented to or considered by the bankruptcy court. *See Matter of Quenzer*, 19 F.3d 163, 164 (5th Cir. 1993); *Matter of Gilchrist*, 891 F.2d 559 (5th Cir. 1990); *see also United States v. Williams*, 156 B.R. 77, 81 (S.D. Ala. 1993) ("This court's function on appeal from a Bankruptcy Court's determination is to reverse, affirm, or modify only those issues that were presented to the trial judge.").

**B.      Standard of review for a Rule 60(b) motion for relief from judgment.**

This Court will review the Bankruptcy Court's denial of Appellant's Rule 60(b) motion, as incorporated by Rule 9024 of the Federal Rules of Bankruptcy Procedure, for abuse of discretion. *In re Pettle*, 410 F.3d 189, 191 (5th Cir. 2005) (citing *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 997 (5th Cir.2001)). Under this standard, "[i]t is not enough that the granting of relief might have been permissible, or even warranted—denial must have been so unwarranted as to constitute an abuse of discretion." *Id.* (citing *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th

Cir.1981)).  The Fifth Circuit has consistently held that the "relief under Rule 60(b) is considered an extraordinary remedy . . . [and that] '[t]he desire for a judicial process that is predictable mandates caution in reopening judgments.' " *Carter v. Fenner*, 136 F.3d 1000, 1007 (5th Cir.1998) (quoting *Bailey v. Ryan Stevedoring Co., Inc.*, 894 F.2d 157, 160 (5th Cir.1990)).

To support a claim for relief from judgment under Rule 60(b)(2) on the basis of newly discovered evidence, Appellant must demonstrate (1) the evidence was discovered following trial; (2) due diligence on the part of Jacobson to discover the new evidence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; (5) the evidence is such that a new trial would probably produce a new result. *Governmental Financial Services One, L.P. v. Peyton Place, Inc.*, 62 F.3d at 767, 771 n.10 (5th Cir. 1995).

To support a claim for relief from judgment under Rule 60(b)(3) on the basis of fraud, Appellant must demonstrate by clear and convincing evidence: (1) that the adverse party engaged in fraud or other misconduct, and (2) that this misconduct prevented the moving party from fully and fairly presenting his case. *Hesling v. CSX Transp., Inc.*, 396 F.3d 632 (5th Cir. 2005).  Rule 60(b)(3) "is aimed as judgments which were unfairly obtained, not at those which are factually incorrect." *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978).

Pursuant to Rule 60(b)(4), a judgment is void only if the court that rendered it lacked subject matter jurisdiction or acted in a manner inconsistent with due process of law.  *Carter*, 136 F.3d at 1006.  Unlike motions under Rule 60(b)(2) and 60(b)(3), this Court must review the Bankruptcy Court's ruling on a Rule 60(b)(4) motion de novo.  *Id.*

**C.      Although Appellant's dischargeability appeal (Case No. 06-51460) is currently pending before the Fifth Circuit, this Court has jurisdiction to affirm the Bankruptcy Court's denial of Appellant's Rule 60(b) motion as an action taken in aid of the appeal.**

In *Winchester v. United States Attorney for the Southern District of Texas*, the Fifth Circuit affirmed the proposition that once a party notices appeal, the district court is divested of jurisdiction except to "take action in aid of the appeal" or to correct clerical errors under Rule 60(a). 68 F.3d 947, 949 (5th Cir. 1995); *see also In re Dugas*, 115 Fed. Appx. 674, 676 (5th Cir. 2004). In *Winchester*, the Fifth Circuit examined the situation where a district court considers a Rule 60(b) motion filed after a notice of appeal, and distinguished between a district court's denying such a motion, or granting it. *Id.* While denying a Rule 60(b) motion is permissible as action in furtherance of the appeal, " '[w]hen the district court is inclined to grant the 60(b) motion, . . . then it is necessary to obtain the leave of the court of appeals. Without obtaining leave, the district court is without jurisdiction, and cannot grant the motion.' " *Id.* (quoting *Travelers Ins. Co. v. Liljeberg Enters.*, 38 F.3d 1404, 1407 n.3 (5th Cir.1994)).

In this case, Appellant's dischargeability appeal is currently pending before the Fifth Circuit as case number 06-51460. Based on *Winchester*, this Court has jurisdiction to affirm the Bankruptcy Court's denial of Appellant's Rule 60(b) motion because it is an action "taken in aid of the appeal."

**D.      Overview of testimony at the hearing before the Bankruptcy Court.**

**1.      Identification of prejudice suffered by Jacobson.**

After reviewing Appellant's brief, this Court did not understand exactly how Appellant claims he was prejudiced by Ormsby's failure to disclose the alleged real party in interest. Without knowing the nature of the prejudice allegedly suffered by Appellant, it is impossible for this Court to evaluate the viability of Appellant's Rule 60(b) motion. After reviewing the opening statements

-14-

by Jacobson's attorney at the hearing before the Bankruptcy Court, the Court believes that it has identified Appellant's central allegations of prejudice: (1) the new evidence suggests that Miller was not a confused, elderly man who was "duped" or fraudulently induced by Jacobson's statements into signing the various Modification Agreements regarding the Jacobson Debt, but was rather a sophisticated businessman who was well aware of the risks and benefits attendant to those business decisions (Tr. 9:5-9, 21:2-8, 21:12-15); (2) the fact that Miller created the Trust, the LLC, and sold a 50% interest in the LLC to Ormsby after he signed the Modification Agreement regarding the Jacobson Debt supports the conclusion that Miller was not "duped" by Jacobson's fraudulent representations (Tr. 21:12-15); (3) if the LLC held an ownership interest in this cause of action, then Appellant could have used that information during trial to impeach Ormsby's credibility (Tr. 6:3-8); and (4) the judgment is void because it was not prosecuted by the real party in interest (Tr. 9:15-17).

2. **Substance of testimony elicited from Ormsby at the hearing.**

Brett Ormsby was the only non-attorney witness who testified at the hearing before the Bankruptcy Court. Ormsby testified that Miller instructed him to prosecute the nondischargeability action against Jacobson. Tr. 39:24-25, 40:1-2. When this adversary proceeding was filed, Ormsby believed that Miller "owned" the cause of action against Jacobson, Tr. 46:14-17, and he believed that the Trust did not become effective until after Miller's death. Tr. 47:22-25. According to Ormsby, neither he nor the LLC will receive any financial benefit if funds are recovered from Jacobson in satisfaction of the Bankruptcy Court's judgment. Tr. 49:19-24. Considering the fact that Miller was the sole owner of the LLC, Ormsby viewed the LLC as the alter-ego of Miller. Tr. 50:25. The Trust and the LLC were created because Miller's financial interests were in disarray, and Ormsby viewed these entities as vehicles for getting "things back together and working again." Tr. 51:5-10. The

LLC held no assets when it was originally created in 2002, but at a meeting on January 7, 2004, Ormsby met with Miller and decided on the assets that would be transferred to the LLC. Tr. 53:7-12. Although Ormsby listed the Jacobson Debt in a document as a "management demand" of the LLC, this asset was not included in the final inventory of LLC assets submitted to the Utah Probate Court. Tr. 58:3-17, 59:1-5. During cross-examination, Ormsby testified that this document was "a summary that I typed up for a family meeting and these were the things I was working on . . . to justify my $5,000 a month salary [working as manager of the LLC]." Tr. 72:10-16.  Apparently, Jacobson's attorney relied on this document, in conjunction with Ormsby's deposition testimony in the Utah Civil Action, in coming to the conclusion that the LLC owns the Jacobson cause of action.  Ormsby testified that in the event that the Bankruptcy Court concluded that the Trust or the LLC owned the Jacobson cause of action, he was willing to ratify the continuation of this lawsuit in his capacity as trustee of the Trust and manager of the LLC. Tr. 62:4-8, 63:4-8.

During cross-examination, Ormsby acknowledged that Miller was the beneficiary of the deeds of trust, and he agreed that the General Conveyance appeared to transfer the deeds of trust to the Trust. Tr. 74:3-10.  Ormsby acknowledged that Miller "knew what he was doing" when he transferred the 50% LLC interest to Ormsby in 2004.

**E.      The Court affirms the Bankruptcy Court's denial of Appellant's Rule 60(b) motion.**

**1.      Rule 60(b)(2)**.

The Court affirms the Bankruptcy Court's denial of Appellant's Rule 60(b)(2) motion for relief from judgment because Appellant did not exercise due diligence in discovering the new evidence, the new evidence is not material because it is merely impeaching, and/or the new evidence is not such that a new trial would probably produce a new result.  Additionally, the Court concludes

that certain appellate issues were waived by Appellant because they were inadequately briefed.

The Bankruptcy Court concluded that the note or notes comprising the indebtedness owed by Jacobson to Miller was never transferred to the Trust or the LLC.  On April 24, 2002, Miller executed a "General Conveyance" that transferred property from Miller to Ormsby, in his capacity as trustee of the Trust.  The relevant portion of the "General Conveyance" provides as follows:

> Conveyance. For good and valuable consideration, and the receipt and sufficiency of which are acknowledged, I hereby give, grant, bargain, sell, convey, quitclaim, transfer and assign unto grantee, all of my *real property*, and all of my interests of every kind in and to real property, wherever situated and whether or not vested of record in me, including all fee interests . . . deeds of trust . . . and all other interests of every kind generally considered to be real property, whether like or unlike the foregoing.

APLEE 306 (emphasis added).  The General Conveyance was executed by Miller before the condominiums were foreclosed upon during August 2002. "Promissory notes, net-profit agreements, and cash are personal property, not real property." *San Antonio Area Foundation v. Lang*, 35 S.W.3d 636, 640 (Tex. 2000).  The Bankruptcy Court's found that the General Conveyance did not transfer the Jacobson Debt because that debt constituted the personal property of Miller, not real property. The Bankruptcy Court concluded that the General Conveyance transferred the deeds of trust securing the Jacobson Debt, but the General Conveyance did not transfer the underlying indebtedness secured by those deeds of trust.

The "January 7, 2004 Valuation of JR Miller Investments, LC" indicates that the LLC currently holds title to the foreclosed condominiums, but not the underlying Jacobson Debt.[5]  APLEE

---

[5]The Court notes that record title of the condominiums is currently held by Ormsby, in his capacity as conservator of Miller.  Tr. 29:8-10. Although the Bankruptcy Court apparently concluded that the deeds of trust were transferred to the Trust and the condominiums were later transferred to the LLC, neither the Trust nor the LLC have ever held record title to the condominiums.

369.  This document was submitted to the Utah Probate Court that approved the sale of the 40%

membership interest in the LLC to Ormsby.  The foreclosed condominiums are listed as asset

number seven ("Point Two Turtle Creek Condominiums"), with an appraised value of $800,000,

representing the amount of the credit bid at the foreclosure sale.  Although asset numbers three, four,

five, and six are listed as "notes receivable," the Jacobson Debt is conspicuously absent from the

LLC's list of assets. The "Adjusted Total Value" of the LLC's assets is $3,000,000.  In order to

obtain the 50% ownership interest in the LLC, Ormsby paid $1,500,000, representing half the

reported value of the LLC's assets.  APLEE 462.  Appellant has not identified any documents

indicating that the Jacobson Debt was transferred to the Trust or the LLC.  Although Ormsby

currently holds record title to the foreclosed condominiums in his capacity as conservator of Miller,

the Bankruptcy Court apparently concluded that the Trust held title to the condominiums through

the General Conveyance even though its ownership interest was not recorded in the deed records,

and the Trust has conveyed the condominiums to the LLC.

The Bankruptcy Court's ruling raises some interesting legal questions.  For example, was the

Jacobson Debt the personal property of Miller?  Did the "General Conveyance" transfer the deeds

of trust to the Trust, but not the underlying Jacobson Debt or the fraud cause of action associated

with it?  Is the Trust the alter-ego of Miller, and does Ormsby, in his capacity as conservator of

Miller, have standing to sue in the event that the Trust owned the Jacobson Debt?  The Court

declines to rule on these appellate issues because they have been waived or abandoned for having

been inadequately briefed by Appellant.  *See L&A Contracting Co. v. Southern Concrete Servs.*, 17

F.3d 106, 113 (5th Cir. 1994); *McKethan v. Texas Farm Bureau*, 996 F.2d 734, 739 n.9 (5th Cir.

1993), *cert. denied*, 510 U.S. 1046 (1994); *Dardar v. Lafourche Realty Co., Inc.*, 985 F.2d 824, (5th

Cir. 1993) ("Questions posed for appellate review but inadequately briefed are considered abandoned"). In his brief, Appellant did not cite to any legal authority to support his argument that the Bankruptcy Court erred in its resolution of the above-referenced legal issues. Although Appellee cited to several cases supporting the Bankruptcy Court's legal conclusions and factual findings that appear persuasive, the Court declines to address them.

Even assuming that the Trust or the LLC "owned" the Jacobson Debt, the Court concludes that Appellant did not exercise due diligence in discovering this information. The Court agrees with Appellee's argument that during discovery, Jacobson never inquired whether the claims in question were owned by Miller individually, or by some other entity controlled by Miller. The discovery document requests offered by Appellant ask for production of information related to Ormsby's appointment as conservator. APLEE 133. Appellant never requested that Ormsby produce all information related to his legal standing as conservator to bring the claims as the real party in interest. The referenced document request of Jacobson merely asks for the production of documents that supports the allegations contained in paragraph six of the Compliant. Paragraph six merely asserts that Ormsby is the duly appointed and acting conservator of Miller. Importantly, Appellant never asked the crucial question of whether Miller was still the holder of the note or notes constituting the Jacobson Debt at the time of the litigation.

Appellant also did not act with due diligence to discover this new evidence because all of the pleadings relied upon by Jacobson in support of his motion were filed in Utah state court proceedings substantially prior to the trial in this adversary proceeding. These documents were readily available to Jacobson and his attorney as public filings. Jacobson's attorney testified that he performed no research prior to trial of the adversary proceeding to determine if either Ormsby or Miller were

involved in other litigation.  Tr. 88:16 - 89:2. The LLC Operating Agreement, the Consent to Membership Interest Purchase Agreement, the Petition for Order Approving Sale of Portion of LC Membership Interest, and the Order Approving Sale of Portion of LC Membership Interest were filed with the Utah Probate Court on March 25, 2004.  APLEE 308.  The trial in this adversary proceeding did not take place until May 2005.  Thus, the Rule 60(b)(2) motion must fail because Appellant did not exercise due diligence in discovering the new facts.

Even assuming that the Trust or the LLC "owned" the Jacobson Debt, the Court concludes that the evidence was not material because it was merely impeaching, or the new evidence is not such that a new trial would probably produce a new result.  Appellant argues that if the LLC held an ownership interest in this cause of action, then Appellant could have used that information during trial to impeach Ormsby's credibility.  Although Jacobson argues that the "new evidence" could have been used for impeachment of Ormsby at the time of trial to show his true motivation in pursing the litigation, "new evidence" that is merely "cumulative or impeaching" is not sufficient to grant a new trial under Rule 60(b)(2). *Governmental Financial*, 62 F.3d at 771 n.10.  Appellant also argues that the new evidence suggests that Miller was not a confused, elderly man who was "duped" or fraudulently induced by Jacobson's statements into signing the various Modification Agreements regarding the Jacobson Debt, but was rather a sophisticated businessman who was well aware of the risks and benefits attendant to those business decisions.  Appellant argues that Miller's creation of the Trust and the LLC, and his sale of a 50% membership interest in the LLC to Ormsby demonstrate that Miller was able to make sound business decisions after 2002.

This Court previously affirmed the Bankruptcy Court's implicit finding of justifiable reliance.  Although this Court's prior Order affirming the Bankruptcy Court's nondischargeability finding

mentioned that Miller resided in a nursing home and had Parkinson's disease, the Court's justifiable reliance finding is not undermined by the fact that Miller was able to transact business after 2002. Section 523(a)(2)(A) requires justifiable, but not reasonable reliance. *Field v. Mans*, 516 U.S. 59, 74 (1995). Justifiable reliance is a less exacting standard that reasonable reliance. *Id.* at 77. Reliance on a representation is justifiable if its falsity is not ascertainable upon a cursory examination or investigation. *Id.* at 71. This Court previously concluded that the falsity of Jacobson's representations to Miller were not ascertainable by Miller upon a cursory examination or investigation, and the Court finds that Appellant's new evidence regarding Miller's mental capacity after 2002 does not undermine this conclusion. Thus, the Rule 60(b)(2) motion must fail because the new evidence is merely impeaching, or it would not have produced a different result.

In his brief, Appellant does address the legal issue of whether Appellee's alleged admission that the Jacobson Debt was owned by the LLC is a binding admission. The Court agrees with the Bankruptcy Court's finding that certain statements made by Ormsby and his counsel regarding the ownership of the Jacobson Debt were evidentiary admissions, which could be disregarded as incorrect. During a March 17, 2006 deposition for the Utah Civil Action, Ormsby stated that the LLC owned the "notes from Jacobson [regarding] . . . Turtle Creek." APLEE 151, Dep. 31:7-11. "[J]udicial admissions are not conclusive and binding in a separate case from the one in which the admissions were made." *Universal American Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131, 1142 (5th Cir. 1991) (citing *State Farm Mut. Auto Ins. Co. v. Worthington*, 405 F.2d 683, 686 (8th Cir.1968)). At the hearing before the Bankruptcy Court, Ormsby acknowledged that he was mistaken regarding the ownership of the Jacobson Debt and stated that the LLC does not own and never has owned that debt. Trans. 60:4-8. After hearing the evidence and judging the credibility of the witnesses, the

Bankruptcy Court was free to disregard this purported judicial admission and conclude that the deposition testimony regarding ownership of the Jacobson Debt was the result of an honest mistake.

### 2.      Rule 60(b)(3).

The Court affirms the Bankruptcy Court's denial of Appellant's Rule 60(b)(3) motion for relief from judgment because Appellant has not established that Ormsby knowingly engaged in fraud and the alleged fraud did not prevent the moving party from fully and fairly presenting his case. The Court finds that the Bankruptcy Court's credibility determination that Ormsby was an "honest and truthful person" was not clearly erroneous. Even assuming that the Trust or the LLC owns the present cause of action, the evidence suggests that Ormsby made an honest mistake regarding this alleged fact. Furthermore, as discussed previously, the Court finds that the alleged fraud did not prevent the Appellant from fully and fairly presenting his case because the result would have been the same even if this new evidence was before the Bankruptcy Court at trial.

### 3.      Rule 60(b)(4).

Although Appellant alluded to Rule 60(b)(4) at the hearing before the Bankruptcy Court when he claimed that the Court did not have jurisdiction to enter judgment because the real party in interest did not prosecute the case, Appellant did not argue this legal point in his brief. Although this point was arguably waived because Appellant's brief did not address the issue, the Court will consider the Rule 60(b)(4) objection because it implicates the Bankruptcy Court's subject matter jurisdiction. *See Bridgmon v. Array Systems Corporation*, 325 F.3d 572, 575 (5th Cir.2003) (holding that appellate court should raise the issue of subject matter jurisdiction sua sponte even if the lower court did not address the issue). The Court finds that the Bankruptcy Court held subject matter jurisdiction over this "core" adversary proceeding pursuant to 28 U.S.C. §§ 157 & 1334. The

Bankruptcy Court had jurisdiction over Jacobson because he was the debtor in the underlying bankruptcy case.  The Bankruptcy Court acted consistently with due process of law because Jacobson appeared and presented evidence at trial.   To the extent that Appellant's Rule 60(b) objection constitutes a disguised Rule 17(a) objection, the failure to name the "real party in interest" does not implicate the Bankruptcy Court's subject matter jurisdiction. *See Lincoln Property Co. v. Roche*, 546 U.S. 81, 126 S. Ct. 606, 613 (2005) ("Neither Federal Rule of Civil Procedure 17(a), captioned 'Real Party in Interest,' nor Federal Rule 19, captioned 'Joinder of Persons Needed for Just Adjudication,' requires plaintiffs or defendants to name and join any additional parties to this action. Both Rules, we note, address party joinder, not federal-court subject-matter jurisdiction"); *see Ensley v. Cody Resources, Inc.*, 171 F.3d 315, 320 (5th Cir. 1999) ("Although the cases Cody cites refer to lack of standing as a shareholder, not one holds that the inquiry is jurisdictional or that the objection may not be waived.   Indeed, Congress may alter prudential aspects of standing.   Cody's standing objection is a prudential limitation that constitutes an objection to the real party in interest under Fed. R. Civ. P. 17(a).   Because the Federal Rules of Civil Procedure address this prudential standing requirement, they govern our inquiry"); *see Zurich Ins. Co. v. Logitrans, Inc*. 297 F.3d 528, 532 (6th Cir. 2002) ("Several other circuit courts have acknowledged that there is a distinction between questions of Article III standing and Rule 17(a) real party in interest objections").  For these reasons, Appellant's Rule 60(b)(4) objection is without merit.

**F.     Appellant has waived his Rule 17(a) objection because it was not raised before the Bankruptcy Court.**

Rule 17(a) of the Federal Rules of Civil Procedure states the following:

Every action shall be prosecuted in the name of the real party in interest. [A] guardian . . . [or] trustee of an express trust . . . may sue in that person's own name without

> joining the party for whose benefit the action is brought . . . . No action shall be
> dismissed on the ground that it is not prosecuted in the name of the real party in
> interest until a reasonable time has been allowed *after objection* for ratification of
> commencement of the action by, or joinder of substitution of the real party in interest;
> and such ratification, joinder, or substitution shall have the same effect as if the
> action had been commenced in the name of the real party in interest.

(emphasis added).   Rule 17(a) has been incorporated by Rule 7017 of the Federal Rules of

Bankruptcy Procedure. The Fifth Circuit has stated that the last sentence of Rule 17(a) as being

applicable only when the plaintiff brought the action in his own name as the result of an

understandable mistake, because the determination of the correct party to bring the action is difficult.

*Wieburg v. GTE Southwest, Inc.*, 272 F.3d 302, 308 (5th Cir. 2001).  In this case, the Bankruptcy

Court found that Ormsby was an honest and truthful person who had no ulterior motives in bringing

this lawsuit, and the complicated facts of this case strongly suggest that Ormsby's alleged failure to

name the real party in interest, if true, was an understandable mistake.  The Court has no reason to

second-guess this credibility determination.  *See In re Perry*, 345 F.3d 304, 309 (5th Cir. 2003).

To the extent that Appellant's Rule 60(b) motion for relief from judgment is a disguised Rule

17(a) objection, the issue is waived because the real party in interest objection was not addressed or

ruled upon by the Bankruptcy Court at the nondischargeability hearing  in May 2005 or at the Rule

60(b) hearing in October 2006.  Appellant has never requested joinder, ratification, or substitution

of the alleged real party in interest.  *See Ensley,* 171 F.3d at 320 (affirming district court's holding

that a real party in interest objection was waived)*; Gogolin & Stelter v. Karn's Auto Imports, Inc.*,

886 F.2d 100, 102-03 (5th Cir.1989) (Rule 17(a) defense waived when made at the close of the

plaintiff's evidence), *cert. denied*, 494 U.S. 1031 (1990); *Matter of Quenzer*, 19 F.3d 163, 164 (5th

Cir. 1993). Rule 17(a) provides that ratification, joinder, and substitution are the preferred remedies

for a successful Rule 17(a) objection.  The Court notes that Ormsby testified at the hearing before

the Bankruptcy Court and in his Appellee's brief that he was willing to ratify the continuation of this

litigation either in his capacity as trustee of the Trust or as manager of the LLC.  Trans. 62:4-8, 63:4-

8.  At the Rule 60(b) hearing, Appellant's attorney *objected* to Ormsby's attempted oral ratification

of the continuation of this litigation in his capacity as trustee of the Trust and manager of the LLC.

See Tr. 61:1-25.  Appellant's attorney characterized Ormsby's attempted ratification as "an oral

motion . . . which is not a subject of this hearing today." Tr. 61:4-6.  The Court has already

concluded that Appellant did not exercise due diligence in discovering the alleged identity of the real

party in interest and that Ormsby's purported admissions were the result of an honest mistake.

Appellant cannot transform his waived Rule 17(a) objection into a viable Rule 60(b) motion for

relief from judgment.  *See Richardson v. Edwards*, 127 F.3d 97, 99 (D.C. Cir. 1996) ("Richardson

has confused 'standing' with the requirement that suits be prosecuted in the name of the 'real party

in interest,' an objection we will not entertain because Richardson failed to raise it in the bankruptcy

court") (internal citations omitted).

### III. Conclusion

The Court AFFIRMS the Bankruptcy Court's denial of Appellant's Rule 60(b) motion.  The

Clerk is instructed to close this case.

It is so ORDERED.

SIGNED this 5th day of June, 2007.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE